

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed April 20, 2022**

_____
**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| RICKEY DESHAWN CONNOR and | § | CASE NO. 18-50051-rlj13 |
| ROSE JOHN DIGVONNI-CONNOR, | § | |
| Debtors. | § | |

## MEMORANDUM OPINION

On February 23, 2022, the Court held a hearing on the Connors' plan modification and the Trustee's notice of intent to dismiss the Connors' case.  Rose Connor testified at the hearing. At the conclusion of the hearing, the Court took the matters under advisement.

The Court has jurisdiction of this matter under 28 U.S.C. § 1334(b); this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (L).

## BACKGROUND

On February 27, 2018, Rickey and Rose Connor filed for bankruptcy under chapter 13 of the Bankruptcy Code.  On May 30, 2018, the Court confirmed the Connors' chapter 13 plan, which required payments of $1,725 for the first four months and $2,145 for the next fifty-six months.  The plan projected to pay unsecured creditors forty three percent of their claims.  ECF

Nos. 18, 27.[1]  On September 23, 2020, the Trustee[2] proposed a plan modification that raised the

Connors' monthly payments to $2,682 and paid unsecured creditors an estimated fifty percent of

their claims.  ECF Nos. 50, 56.  The Trustee proposed the modification to account for the

Connors' increased income reflected in their 2019 tax return.  ECF No. 50.  The Court approved

the Trustee's plan modification several weeks later.  ECF No. 51.

When the Connors filed their bankruptcy petition, Rose Connor worked at Synergy

Enterprises in an administrative position, and Rickey Connor worked at Occidental Petroleum

Corporation.  At some point, Rose Connor left Synergy Enterprises and moved to another

administrative position at Strategic Maintenance Enterprises.  At Strategic Maintenance, her

gross yearly income was $43,000.  The Covid-19 pandemic caused Strategic Maintenance to face

financial hardship, and in September 2020, Rose Connor lost her job there in a wave of mass

layoffs.  After she lost her job, Rose Connor began to receive unemployment benefits, but the

benefits were less than what she was making at Strategic Maintenance.  The Connors started

making payments to the Trustee in amounts less than the required monthly payments under their

plan and thus started accruing arrearages.

To continue to make payments under their plan, even in the reduced amount, Rickey

Connor decreased his income-tax withholding from his paycheck.  This created a significant tax

liability.  Things got worse yet.  Rose Connor lost her unemployment benefits in August 2021,

and the Connors stopped making *any* payments under their plan.

Since Rose Connor lost her job in 2020, she has continually searched for employment but

has been unable to obtain a new job.  Because of health issues, she is only able to work in limited

settings, increasing the difficulty of finding employment.  The Connors originally intended to

---

[1] "ECF No." hereinafter refers to the numbered docket entry in this bankruptcy case, Case No. 18-50051.
[2] "Trustee" refers to the chapter 13 trustee of the Connors' bankruptcy case.

reduce Rickey Connor's tax withholdings only for a short period until Rose Connor found work. Once she did, they intended to make-up their plan arrears and pay their tax liabilities. But, with Rose Connor still unemployed, the Connors' plan arrears have only increased. And they now have an unpaid income-tax liability for 2020 and 2021 of $18,942.

On December 16, 2021, the Trustee filed a notice of intent to dismiss the Connors' case. ECF No. 53. The Connors had by then accrued a plan arrearage of over $9,600. *Id*. In response to the Trustee's notice, the Connors filed a proposed plan modification on January 17, 2022. ECF No. 56. The modification decreases the Connors' monthly plan payments from $2,682 to $1,200 and extends the plan term from sixty to eighty months.[3] *Id*. The modification cures the Connors' plan arrears and pays their post-petition tax liabilities, but it also decreases the payout to unsecured creditors from fifty percent to thirty-six percent of their claims. *Id*. Rose Connor testified that the plan allows for no unnecessary expenses, represents their best efforts, and is proposed in good faith.

The Trustee filed an objection to the Connors' plan modification. ECF No. 62. He argues that the modification impermissibly lowers the unsecured creditors' pool (the amount required to be paid to unsecured creditors under § 1325(b)).[4] He says the modification is not filed in good faith and contends that unsecured creditors, through their reduced dividend, are effectively paying the Connors' post-petition taxes that *they* accrued as a result of *their* negligence.

---

[3] While a chapter 13 plan traditionally may not be modified to extend beyond a sixty-month term, 11 U.S.C. § 1329(c); *In re Stanke*, No. 16-60110-RLJ13, 2022 WL 99498, at *3 (Bankr. N.D. Tex. Jan. 10, 2022), a recent amendment to the Bankruptcy Code allows a plan modification to extend a plan up to an eighty-four-month term if "the debtor is experiencing or has experienced a material financial hardship due, directly or indirectly, to the coronavirus disease 2019 (COVID-19) pandemic." 11 U.S.C. § 1329(d). The Trustee does not dispute that Rose Connor's job loss was at least indirectly due to the Covid-19 pandemic or that a plan-term extension up to eighty-four months is allowed under the circumstances.

[4] The unsecured creditors' pool in the confirmation order is $75,370.20. ECF No. 27. The Connors' proposed modification pays approximately $64,400 to unsecured creditors. ECF No. 62.

**DISCUSSION**

"'At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to' adjust payments, schedules, or the distribution of those payments to different creditors." *Brown v. Viegelahn (In re Brown)*, 960 F.3d 711, 720 (5th Cir. 2020) (quoting § 1329(a)(1)–(4)).[5] The Connors' plan modification adjusts the Connors' monthly payments, their payment schedule, and the distribution of payments to unsecured creditors as allowed by § 1329. Nonetheless, the Trustee argues that the plan modification should be denied because it is barred by res judicata and was not proposed in good faith.

**I.     Res Judicata**

The Trustee argues that the Connors' plan modification should be denied because it decreases the size of the unsecured creditors' pool. He contends that the unsecured creditors' pool, once established under a confirmed chapter 13 plan, cannot, under res judicata, be altered by a plan modification.

The Connors admit that their modification reduces the distribution to unsecured creditors but argue that the unsecured creditors' pool is a static number calculated at confirmation that cannot be altered by a modification and is not altered by theirs. While this argument may be true, it misses the Trustee's point—despite the exact language he employed, the Trustee objects because the Connors' modification reduces distributions to unsecured creditors. The Court therefore construes the Trustee's argument to mean that reductions in distributions to unsecured creditors under a confirmed chapter 13 plan are barred by res judicata.

---

[5] All references to "§" or "section" refer to 11 U.S.C., the Bankruptcy Code, unless otherwise stated.

"There can be no doubt … that res judicata applies to an issue addressed or that could have been addressed in connection with plan confirmation." *In re Wilkerson*, No. 07-43662-DML, 2011 WL 2650649, at *3 (Bankr. N.D. Tex. July 6, 2011) (citing *Eubanks v. F.D.I.C.*, 977 F.2d 166, 173 (5th Cir. 1992)); *see also In re Roten,* No. 07-45617 DML, 2011 WL 3809946, at *2 (Bankr. N.D. Tex. Aug. 29, 2011). For a claim to be barred by res judicata, four elements must be met: "the parties must be identical in both suits, the prior judgment must have been rendered by a court of competent jurisdiction, there must have been a final judgment on the merits and the same cause of action must be involved in both cases." *Ries v. Paige (In re Paige)*, 610 F.3d 865, 870 (5th Cir. 2010) (quoting *Nilsen v. City of Moss Point, Miss.*, 701 F.2d 556, 559 (5th Cir. 1983)). "Additionally, where the four elements of the res judicata test are met, [a court] must also determine whether 'the previously unlitigated claim could or should have been brought in the earlier litigation.'" *Id*. (quoting *D-1 Enters., Inc. v. Com. State Bank*, 864 F.2d 36, 38 (5th Cir. 1989)).

### a. Elements of Res Judicata

The first three elements of res judicata are met here. First, both the Trustee and the Connors were privy to the Connors' plan confirmation. Notice of Hearing on Debtors' Plan, ECF No. 15; Order Confirming Chapter 13 Plan, ECF No. 27. Second, the Court is a court of competent jurisdiction to enter an order confirming a chapter 13 plan. 28 U.S.C. §§ 1334(a), 157(L); Misc. Order No. 33 Order of Reference of Bankruptcy Cases, U.S. District Court for N.D. Tex. Third, an order confirming a chapter 13 plan is a final judgment. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 269 (2010).

The additional requirements of res judicata, however—that the same cause of action be involved in both cases and that the present claim could or should have been brought in earlier

litigation—are not met here.  To determine whether the same cause of action is being asserted in a later case, courts in the Fifth Circuit employ the "transactional test": "the preclusive effect of a prior judgment extends to all rights the original plaintiff had 'with respect to all or any part of the transaction, or series of connected transactions, out of which the [original] action arose.'"  *Paige*, 610 F.3d at 872 (alteration in original) (quoting *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395–96 (5th Cir. 2004)).  The critical issue under the transactional test is whether the two claims are based on "the same nucleus of operative facts."  *Id*. (quoting *Osherow v. Ersnt & Young, LLP (In re Intelogic Trace, Inc.)*, 200 F.3d 382, 386 (5th Cir. 2000)).

The Connors' plan modification is based entirely on the premise that the circumstances relevant to determining distributions to unsecured creditors have changed since confirmation. Distributions to unsecured creditors in a chapter 13 case are calculated at confirmation based on a debtor's monthly disposable income.  Keith M. Lundin, Lundin On Chapter 13, § 92.1, ¶¶ 7–13, LundinOnChapter13.com (last visited March 4, 2022); § 1325(b).  But a debtor's income may change, and "[m]odification is based on the premise that, during the life of the plan, circumstances may change, and parties should have the ability to modify the plan accordingly." *Meza v. Truman (In re Meza)*, 467 F.3d 874, 877 (5th Cir. 2006).  Here, the express purpose of the Connors' plan modification, including the reduced payout to unsecured creditors, is to cure plan-payment arrears, pay post-petition taxes, and bring payments in line with the Connors' reduced income.  None of these facts central to the modification—arrears, post-petition taxes, and Rose Connor's unemployment—existed when the Connors' plan was originally confirmed.

This is in contrast to the modification proposed in *Wilkerson*, the case the Trustee relies on.  There, the chapter 13 trustee proposed a plan modification three years into a debtor-couple's chapter 13 case.  2011 WL 2650649, at *2.  The unsecured creditors' pool, plus secured and

administrative claims, was significantly smaller than the plan base, and the trustee sought to

increase distributions to unsecured creditors to bring them more in-line with the plan base.[6] *Id.*

Despite the disparity, the court held the modification was barred by res judicata because the issue

of distributions to unsecured creditors was being relitigated based on no new facts—the disparity

between the plan base and the unsecured creditors' pool was apparent on the face of the plan

before confirmation—and the trustee or creditors could have objected to the plan before

confirmation. *Id.* at *3–5.

Notably, the court limited its holding to the facts before it: "The preclusive effect of res

judicata does not … extend to every proposed modification … but rather to a modification

respecting an issue that could and should have been addressed at confirmation; by its very

elements, the doctrine only prevents the Trustee from 'seek[ing] a second bite at the apple.'" *Id.*

at *6 (quoting *In re Braune*, 385 B.R. 167, 172 (Bankr. N.D. Tex. 2008)).

Unlike *Wilkerson*, the Connors are not "seeking a second bite at the apple" because the

circumstances that predicated their plan modification did not arise until after confirmation. The

Connors are not seeking to relitigate the same claim or issue from prior litigation, nor could the

present issues have been resolved before confirmation. For these reasons, the Connors' plan

modification is not barred by res judicata.

### b. Application of § 1329(a)

The Trustee's proposition—that reducing the amount paid to unsecured creditors is

*always* barred by res judicata—also contravenes the language of § 1329(a). Common law

---

[6] The "plan base" is simply the term used to identify the total plan payments projected to be made under the chapter 13 plan. It is the product of the amount of monthly plan payments multiplied by the plan term (in months). The unsecured creditors' pool is the minimum amount a debtor must pay to unsecured creditors in his/her plan for the plan to be confirmed and is derived from multiplying monthly disposable income under § 1325(b)(2), which is calculated using Official Form 122C-2, by the applicable commitment period under § 1325(b)(4), which is determined using Official Form 122C-1.

principles like res judicata apply to claims based on federal law "except 'when a statutory

purpose to the contrary is evident.'" *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104,

108 (1991) (quoting *Isbrandtsen Co. v. Johnson*, 343 U.S. 779, 783 (1952)).  Under § 1329(a), a

chapter 13 plan may be modified to "increase or reduce the amount of payments on claims of a

particular class provided for by the plan."  § 1329(a)(1).  Because the Bankruptcy Code allows a

plan modification to alter distributions to creditors, it cannot be said that res judicata always bars

reduced distributions to creditors.  Such a holding would eviscerate a primary purpose of plan

modifications.

   *Brown v. Viegelahn* illustrates the point.  *(In re Brown)*, 960 F.3d 711 (5th Cir. 2020).

In *Brown*, the bankruptcy court included in a debtor's chapter 13 plan-confirmation order the

requirement that the debtor could not amend his plan if the amendment failed to pay unsecured

creditors 100% of their claims.  *Id*. at 715, 721.  The Fifth Circuit noted that § 1329 allows plan

modifications to "adjust payments, schedules, or the distribution of those payments to different

creditors."  *Id*. at 720.  Because the confirmation order limited the debtor's ability to request

certain modifications, the court held the order violated § 1329.  *Id*. at 721.  Applying the doctrine

of res judicata to *all* plan modifications that reduce distributions to unsecured creditors would

flout the logic of *Brown*.  It would rescind the key right of § 1329 recognized in *Brown* and defy

*Brown*'s core holding.

   The Trustee's modification filed in 2020 also shows that distributions to unsecured

creditors may be subject to change in some circumstances.  That modification, which was

approved by the Court, raised the distribution to unsecured creditors from forty-three percent to

fifty percent of their claims.  ECF Nos. 18, 50, 56.  The Trustee proposed the modification

because the Connors' income increased and they could thus pay more to their creditors.  ECF

No. 50. Plan modifications account for changes in debtors' circumstances, whether those changes improve or impede a debtor's ability to pay creditors.

As the Trustee's earlier modification in this case makes clear, res judicata does not bar all plan modifications that change distributions to unsecured creditors. The elements of res judicata must be applied to the unique facts of each chapter 13 plan modification. Res judicata does not bar the Connors' proposed plan modification.

## II. Good Faith

In addition to the requirements of § 1329, chapter 13 plan modifications must also comply with § 1325(a). § 1329(b). Section 1325(a)(3) requires that a chapter 13 plan be "proposed in good faith and not by any means forbidden by law." § 1325(a)(3). "To determine whether a Chapter 13 plan was filed in good faith, the bankruptcy court applies a 'totality of the circumstances' test." *Suggs v. Stanley (In re Stanley)*, 224 F. App'x 343, 346 (5th Cir. 2007). "Good faith is meant to protect the integrity of the bankruptcy process and prevent a debtor from intentionally exploiting the bankruptcy process to delay creditors or achieve an improper purpose." *In re Price*, 609 B.R. 475, 480 (Bankr. N.D. Tex. 2019). Here, the Trustee alleges that the Connors are exploiting the bankruptcy process by forcing unsecured creditors to pay for the Connors' negligence in failing to pay their post-petition taxes.

But Rose Connor testified that their proposed modification extends the term of the plan to 80 months so that unsecured creditors would be paid the same amount through the plan as a 60-month modified plan that did not include post-petition tax. She said it was in her and her husband's best interest to maximize payments to unsecured creditors because a large portion of their unsecured debt consists of non-dischargeable student loans that they would like to pay-off through the plan. Unsecured creditors are not "paying for the Debtors' negligence" as the

9

Trustee suggests. ECF No. 62. They are receiving a smaller payout through the modified plan, but that decreased distribution results from the Connors' reduced income, not their post-petition tax obligations.

The Connors' earlier attempts at making plan payments by delaying tax payments may have been misguided. But that failed tactic does not doom their proposed plan modification to a bad-faith determination where the modification cures arrears and continues to pay unsecured creditors to the extent the Connors are able. Furthermore, the addition of post-petition taxes alone does not indicate bad faith when the Code expressly allows for their inclusion in plan modifications. § 1322(b)(6) (allowing plans to include claims under § 1305); § 1305 (allowing claims for post-petition taxes).

Rose Connor testified that their plan modification allows for no unnecessary expenses for her and her husband and represents their best efforts to pay creditors. *See Stanley*, 224 F. App'x at 346 (listing relevant factors to good faith analysis). There is no evidence that the Connors have made any misrepresentations or that they are attempting to evade obligations or abuse the Bankruptcy Code. *See id*. Rather, the Connors' current plan modification shows that they are trying to save their plan while continuing to treat creditors fairly. The Court concludes that the Connors have proposed their plan modification in good faith.

## III.    Conclusion

The elements of res judicata are not met here to bar the Connors' proposed plan modification. Because the modification increases the plan term to pay post-petition taxes and represents the Connors' best efforts to pay creditors, it is proposed in good faith. As the modification otherwise complies with the relevant provisions of the Bankruptcy Code, it is

hereby approved.  The Trustee is directed to upload an order approving the Connors' chapter 13

plan modification.

### End of Memorandum Opinion ###